**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>**Plaintiff,**<br><br>**v.**<br><br>**JOSEPH MELI,**<br>**MATTHEW HARRITON,**<br>**875 HOLDINGS, LLC,**<br>**127 HOLDINGS, LLC,**<br>**ADVANCE ENTERTAINMENT, LLC, and**<br>**ADVANCE ENTERTAINMENT II, LLC,**<br><br>**Defendants,**<br><br>**JESSICA INGBER MELI, and**<br>**127 PARTNERS, LLC,**<br><br>**Relief Defendants.** | **CIVIL ACTION NO.**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, Securities and Exchange Commission (the "Commission" or "SEC"), alleges as follows:

**SUMMARY**

1. This case involves an ongoing fraudulent scheme in which defendants Joseph Meli, Matthew Harriton, 875 Holdings, LLC ("875 Holdings"), 127 Holdings, LLC ("127 Holdings"), Advance Entertainment, LLC ("Advance Entertainment"), and Advance Entertainment II, LLC ("Advancement Entertainment II") (collectively, the "Defendants") raised, and are continuing to raise, approximately $81 million from at least 125 investors located in 13 states, for purported investment in ticket reselling enterprises involving high profile events

including the Broadway musical *Hamilton.* The Defendants diverted at least $51 million of the incoming investor funds to perpetuate a Ponzi scheme and to enrich themselves.

2. From at least 2015 to the present, Meli and Harriton have represented to investors and prospective investors that they would pool investor funds to purchase large blocks of tickets for major concerts and musicals. Meli and Harriton further represented that the tickets then would be resold at a profit to produce high returns for the investors. Investors received written contracts which promised full repayment of principal plus a 10% annualized profit, to be paid in less than one year from investment. In addition, investors were promised 50% of any profits from the ticket resales that remained after investors received their return of principal and 10% return.

3. Contrary to the representations by Meli and Harriton, only a small portion of investor funds was used to make payments to entities with any apparent connection to the ticket reselling business. Instead, at least $48 million of incoming funds from apparent investors was used to repay and provide purported investment returns to other investors, thereby perpetuating the illusion of a profitable, ongoing investment. This enabled Meli and Harriton to raise even more money from investors and to fraudulently use investor money for personal benefit.

4. From in or about January 2015 through October 2016, apparent investor funds totaling approximately $1.2 million were transferred to Harriton directly for his personal use. Apparent investor funds also have been transferred to 875 Holdings, 127 Holdings, Advance Entertainment, and Advance Entertainment II, all of which are entities Meli or Harriton control. Investor funds transferred to the entities controlled by Meli or Harriton have been used to make payments for what appear to be personal expenses, including jewelry purchases, private school tuition payments, and payments to casinos. Funds also have been transferred from one or more

of the Defendants to Jessica Ingber Meli, the spouse of Joseph Meli, and to 127 Partners, LLC ("127 Partners"), an entity controlled by Meli, (collectively, the "Relief Defendants"), who have no legitimate interest in, or right to, the funds they received and which represent proceeds of the fraudulent scheme.

5. As a result of the conduct alleged herein, the Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 340.10b-5].

6. The Commission seeks emergency preliminary relief, including a temporary restraining order against further violations of the federal securities laws and an emergency asset freeze to preserve assets necessary to satisfy any eventual judgment against the Defendants. The Commission also requests an immediate accounting, expedited discovery, a repatriation order, an order prohibiting the Defendants from continuing to accept or deposit additional investor funds, and an order prohibiting the alteration or destruction of relevant documents.

7. The Commission also seeks a permanent injunction against the Defendants, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful conduct set forth in this Complaint, together with prejudgment interest, civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15

U.S.C. §§ 78u(d), 78u(e), and 78aa].

9. Venue lies in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions and courses of business alleged in this Complaint, including communications with investors and prospective investors, occurred within the Southern District of New York, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails. In addition, Meli and Harriton reside in the district.

## DEFENDANTS

10. Joseph Meli, age 42, lives in New York, New York. He and Harriton are the direct or indirect owners of Advance Entertainment II. Meli owns 100% of Advance Entertainment which, in turn, owns an 80% interest in Advance Entertainment II. Meli also controls 127 Holdings and 127 Partners. Meli, with Harriton, manages 875 Holdings, which Harriton controls.

11. Matthew Harriton, age 52, lives in New York, New York. He and Meli are the direct or indirect owners of Advance Entertainment II, and Harriton, with Meli, manages 875 Holdings. Harriton owns an 80% interest (through two intermediary LLCs) in 875 Holdings. He directly owns a 20% interest in Advance Entertainment II.

12. 875 Holdings, LLC is a Delaware limited liability company organized in 2015 with a principal place of business in Stamford, Connecticut. Meli and Harriton together manage 875 Holdings, which Harriton controls. An 875 Holdings bank account received investor funds and was used to make payments as part of the ticket investment scheme.

13. 127 Holdings, LLC is a Delaware limited liability company controlled by Meli

and organized in 2009 with a principal place of business at what appears to be Meli's residence in New York, New York. A 127 Holdings bank account received investor funds and was used to make payments as part of the ticket investment scheme.

14. Advance Entertainment, LLC is a Delaware limited liability company controlled by Meli and organized in 2011 with a principal place of business in New York, New York at what appears to be Meli's residence. Advance Entertainment bank accounts received investor funds and were used to make payments as part of the ticket investment scheme.

15. Advance Entertainment II, LLC is a Delaware limited liability company organized in 2016 with a principal place of business in New Canaan, Connecticut. Harriton manages Advance Entertainment II, and Meli and Harriton directly or indirectly own Advance Entertainment II. Advance Entertainment II bank accounts received investor funds and were used to make payments as part of the ticket investment scheme.

**RELIEF DEFENDANTS**

16. Jessica Ingber Meli is the spouse of and lives at the same address as Joseph Meli in New York, New York. During the period from January 2015 through October 2016, she received at least $136,000 of investor funds through transfers from 127 Holdings.

17. 127 Partners, LLC is a Delaware limited liability company controlled by Meli and organized in 2009 with a principal place of business at what appears to be Meli's residence in New York, New York. During the period from January 2015 through October 2016, a 127 Partners, LLC bank account received approximately $229,000 of investor funds from the ticket investment scheme through payments from 127 Holdings.

**FACTS**

18. From in or about January 2015 through October 2016, Meli and Harriton offered and sold a total of approximately $81 million of interests in four different entities (Advance Entertainment, Advance Entertainment II, 875 Holdings and 127 Holdings (the "Four Entities"), all of which purportedly engaged in ticket resales. Investors frequently invested in more than one entity at various times and may not have clearly distinguished among the entities, which made similar representations about their businesses.

875 Holdings

19. 875 Holdings was organized in or about July 2015. The next month they filed a Form D with the SEC stating that the company was making a private offering of equities in an unspecified business with no revenue, and had sold $1,050,000 to date. In February 2016, 875 Holdings filed an amended Form D stating that 25 persons had invested in the offering, with a total amount sold of $3.4 million. In soliciting the investments, Meli and Harriton made representations that investor money would be pooled and used to buy a participation interest in profits from resale of tickets for high profile events.

20. From in or about July 2015 through October 2016, 875 Holdings received a total of approximately $7.1 million from apparent investors and deposited that amount in the company bank accounts. In soliciting the investments, Meli and Harriton made representations that investor money would be pooled and used to buy a participation interest in profits from resale of tickets for high profile events. Investors received a "profit participation purchase agreement" which included a "participation schedule" stating that within nine months from investment an investor would receive a 10% "preference percentage." Meli and Harriton represented orally that the preference percentage meant an investor would receive a 10% return on an investment. The

agreement also stated that investors would receive a "remainder percentage" of 50%, constituting 50% of any additional profits from the ticket resales.

Advance Entertainment

21. During 2015, after the formation of 875 Holdings, Meli also sold interests in Advance Entertainment, which was formed in 2011. From in or about January 2015 through October 2016, Advance Entertainment received at least $50 million from apparent investors. In December 2015, Meli signed a "Funding Agreement" with an investor. In that agreement, Advance Entertainment falsely represented that it had an agreement with the producer of the Broadway musical *Hamilton* to purchase 35,000 tickets to the musical and that the investor's money would be used to pay part of the cost of obtaining the tickets. The agreement provided that within eight months the investor would receive the return of its investment; along with "an amount sufficient to generate a 10% annualized return" on the investment, and that the investor would also receive 50% of any further proceeds less Advance Entertainment's expenses incurred in reselling the tickets. Those representations were false. Neither Advance Entertainment nor any of Meli or Harriton's other entities had any legitimate agreement with the *Hamilton* producer in question to purchase tickets to the musical, and no purchase of 35,000 tickets to the musical with investor money was made. Nor did Meli or Harriton have any other legitimate source of business revenue to produce the promised returns to the investors.

Advance Entertainment II

22. Advanced Entertainment II was organized in or about February 2016. The next month, Advance Entertainment II filed a Form D with the SEC stating that the company was making a private offering of equities in an unspecified business with no revenue, and had made sales totaling $10,220,000 to date. Advance Entertainment II filed a Form D in August 2016 for

another offering of $13,000,000. From in or about February 2016 through October 2016, Advance Entertainment II received at least $16.3 million of what appear to be investor funds. In soliciting investments for Advance Entertainment II, Meli and Harriton each represented to investors that money invested with the company would be pooled to buy a participation interest in profits from resale of tickets to high profile events, including the Broadway musical *Hamilton* and an Adele concert. Investors received a "profit participation purchase agreement" which confirmed that they were "acquiring a participation interest in a portion of the proceeds derived by the Company from the re-sale of tickets it intends to acquire for a specific Event." The agreement included a "participation schedule" stating that within nine months from the investment the investor would receive a 10% "preference percentage," or return on investment, and a "remainder percentage" of 50%, meaning 50% of any additional profits from the ticket resales.

127 Holdings

23. 127 Holdings was organized in or about 2009. From in or about January 2015 through October 2016, 127 Holdings received at least $7.7 million of what appear to be investor funds. According to an individual who invested $500,000 in 127 Holdings in June 2015, and who later invested additional funds in Advance Entertainment, Meli made substantially the same representations to the investor concerning 127 Holdings as he made concerning Advance Entertainment. In particular, Meli represented that 127 Holdings had an agreement with the producer of *Hamilton* to purchase tickets to the musical in bulk, that the investor's money would be used to pay part of the cost of obtaining the tickets, and that the investor would receive a return on his investment. Those representations were false. Neither Advance Entertainment nor any of Meli or Harriton's other entities had any legitimate agreement with the *Hamilton* producer

in question to purchase tickets to the musical, and no bulk purchase of tickets to the musical with investor money was made.

Defendants Use Investor Funds to Pay Obligations to Prior Investors

24. From January 1, 2015 through October 31, 2016, Meli and Harriton caused the Four Entities they used for their investor solicitations to receive funds totaling approximately $81 million from apparent investors. Meli and Harriton caused the Four Entities to spend only about 10% of that amount (approximately $9 million) to make payments to third party entities that appear to be connected with ticket selling businesses.

25. The largest category of payments the Four Entities made were to individuals who appear to have made earlier investments in the companies, providing purported returns on the investments made by those individuals. From January 1, 2015 through October 31, 2016, the Four Entities paid out over $48 million to investors but appeared to receive essentially no income attributable to any business activity (including ticket resales).

26. Defendants did not pool the $81 million received from apparent investors to buy a participation interest in profits from resale of tickets to high profile events. Instead, Defendants operated a Ponzi scheme, making payments to prior investors from new investor funds. Defendants did not tell investors that, contrary to their representations and contrary to the terms of the written investor participation agreements signed by Meli and Harriton, a significant portion of the invested funds would be used for purposes other than purchasing tickets for resale.

27. Between January and August of 2016, Investor A invested $1,850,000 with Meli and Harriton; specifically, he made separate investments in 875 Holdings, Advance Entertainment and Advance Entertainment II. Investor A first met Meli and Harriton in either December of 2015, or January of 2016. Investor A met both Meli and Harriton in person, and

also spoke with each of them on the phone. Investor A learned from Meli and Harriton that they were in the business of purchasing tickets in bulk and then reselling them on the secondary market. Meli and Harriton represented to Investor A that his money would be pooled with other investors' funds, and used solely for the purchases of tickets associated with events or shows.

28. Between January and August of 2016, Investor A invested $1,850,000 with Meli and Harriton in four tranches. First, on or about January 11, 2016, Investor A invested $500,000 into 875 Holdings. Meli and Harriton told Investor A that 875 Holdings was a diversified fund whose purpose was to purchase tickets for various shows, and that 875 Holdings would have discretion as to which shows or events to purchase tickets for. Next, in January and February 2016, Investor A invested a total of $350,000 into Advance Entertainment to be used for an investment into a ticket purchase for the Broadway musical *Hamilton*. Third, on or about March 3, 2016, Investor A invested $700,000 into Advance Entertainment II. His understanding based on communications with Meli and Harriton was that $200,000 of that investment would be used to fund further purchases of *Hamilton* tickets, and that $500,000 of that investment would be used to fund tickets to an Adele concert or concerts. Finally, on or about August 23, 2016, Investor A invested an additional $300,000 into Advance Entertainment II relating to tickets for a third event, referred to by Meli and Harriton as the "Desert Trip."

29. At or around the times of each of his investments, Investor A signed investment contracts with the entities into which he was investing his funds.

30. Investor A's funds were deposited into several different bank accounts controlled by one or more of the Defendants and then spent or transferred contrary to the representations made to him by Meli and Harriton, and not consistent with the purported investment into event ticket purchases and resales. Payments and transfers included:

a. Investor A's January 11, 2016 investment of $500,000 into 875 Holdings was used, in whole or in part, to fund a payment to another investor, rather than for ticket purchases and resales. The $500,000 was first deposited into an 875 Holding account at Signature Bank ending in '1199 on 1/11/16. All, or at least a significant portion of this investment, along with other available account funds totaling $650,000, was transferred to an Advance Entertainment Merrill Lynch account ending in '3098 on 1/12/16. On 1/14/16, Advance Entertainment used $1.2 million from the Merrill Lynch '3098 account to pay another investor. This payment was funded in part by the transfer from 875 Holdings, including the Investor A funds.

b. Investor A's $250,000 investment into Advance Entertainment was deposited into an Advance Entertainment Merrill Lynch '3098 account on 1/22/16. All, or at least a significant portion of this investment, along with other available account funds totaling $600,000, was used to pay another investor out of the Merrill Lynch account on 1/26/16.

31. On or about December 16, 2015, Investor B signed a funding agreement to invest $1.25 million into Advance Entertainment to fund a portion of a $7 million dollar pooled investment to purchase and resell event tickets, purportedly related to the Broadway musical *Hamilton*. The funding agreement referenced an underlying letter agreement dated in October 2015 between Advance Entertainment and the *Hamilton* producer for the purchase of 35,000 tickets. In reality, neither Advance Entertainment nor any of Meli or Harriton's other entities had any legitimate agreement with the *Hamilton* producer in question to purchase tickets to the musical, and no purchase of 35,000 tickets to the musical was made with investor money.

Advance Entertainment received Investor B's $1.25 million on December 28, 2015, deposited in its Merrill Lynch '3098 account. After depositing the $1.25 million of investor funds, the daily balance of the '3098 account was approximately $1.94 million. The following day, Advance Entertainment disbursed $1.5 million from this account to a third party who does not appear to be involved in ticket purchases, for *Hamilton* or any other event.

32. Between in or around June and October 2015, another individual and his affiliated business (collectively, "Investor C") invested $6 million into Advance Entertainment and 127 Holdings. Similar to Investor B, all or a significant portion of Investor C's funds were invested for the *Hamilton* tickets based on false representations from Meli, claiming that Advance Entertainment had an agreement with the producer of *Hamilton* to purchase $7 million worth of tickets for resale.

33. Meli and Harriton continue to operate the scheme and solicit new investments while purporting to provide returns to previous investors. In December 2016, Meli stated that he has been running a "shell game" involving using certain investors' funds to pay back other investors. Meli also stated in December 2016 that an Advance Entertainment bank account might as well be his personal bank account.

34. Bank statements for November and December 2016 for an account in the name of Advance Entertainment reflect receipt of $4 million from apparent investors; and payments of over $5 million to previous investors.

35. On or about January 19, 2017, Investor A received a wire transfer of $166,666 as purported return on earlier investments. The funds for this transfer appear to have come from deposits during November and December 2016 by other investors.

Defendants Use Investor Funds for Other Undisclosed Purposes

36. In addition to using new investor funds to make payments owed to existing investors, Meli and Harriton have spent almost $2 million of investor funds to buy jewelry and make other retail purchases, to pay private school and camp tuitions, and to make payments to casinos.

Relief Defendants

37. Between January 2015 and October 2016, relief defendant Jessica Ingber Meli received payments totaling approximately $136,800 from 127 Holdings. There is no indication that Jessica Ingber Meli provided services in exchange for these payments, and the payments to her were not disclosed to investors. Jessica Ingber Meli had no legitimate interest in, or right to, the funds she received and which funds represented proceeds of the fraudulent scheme.

38. Between January 2015 and October 2016, relief defendant 127 Partners received payments totaling approximately $229,000 from 127 Holdings. There is no indication that 127 Partners provided services in exchange for these payments, and the payments to it were not disclosed to investors. 127 Partners had no legitimate interest in, or right to, the funds it received and which funds represented proceeds of the fraudulent scheme.

**FIRST CLAIM FOR RELIEF**
**FRAUD IN THE OFFER OR SALE OF SECURITIES**
**(Violations of Section 17(a)(1), (2) and (3) of the Securities Act)**

39. Paragraphs 1 through 38 are re-alleged and incorporated by reference.

40. By reason of the conduct described above, defendants Joseph Meli, Matthew Harriton, 875 Holdings, LLC, 127 Holdings, LLC, Advance Entertainment, LLC, and Advance Entertainment II, LLC, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting with the

requisite degree of knowledge or state of mind (i) employed devices, schemes, or artifices to defraud; (ii) obtained money or property by means of untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

41. By reason of the conduct described above, Defendants violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a), (b) and (c) thereunder)**

42. Paragraphs 1 through 38 are re-alleged and incorporated by reference.

43. By reason of the conduct described above, defendants Joseph Meli, Matthew Harriton, 875 Holdings, LLC, 127 Holdings, LLC, Advance Entertainment, LLC, and Advance Entertainment II, LLC, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, intentionally, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

44. By reason of the conduct described above, Defendants violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Temporarily, preliminarily, and permanently restrain and enjoin Joseph Meli, Matthew Harriton, 875 Holdings, LLC, 127 Holdings, LLC, Advance Entertainment, LLC, and Advance Entertainment II, LLC, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5];

B. Enter a temporary restraining order, preliminary injunction, order freezing assets, order requiring an accounting of assets and liabilities, order requiring repatriation of assets, order prohibiting the accepting or depositing of additional investor funds, order allowing expedited discovery, order prohibiting the alteration or destruction of relevant documents, and order for other equitable relief in the form submitted with the Commission's motion for such relief, as to Joseph Meli, Matthew Harriton, 875 Holdings, LLC, 127 Holdings, LLC, Advance Entertainment, LLC, and Advance Entertainment II, LLC;

C. Order Joseph Meli, Matthew Harriton, 875 Holdings, LLC, 127 Holdings, LLC, Advance Entertainment, LLC, and Advance Entertainment II, LLC, to disgorge, with prejudgment interest, all ill-gotten gains obtained by reason of the unlawful conduct alleged in this Complaint;

D. Order Relief Defendant Jessica Ingber Meli to disgorge, with prejudgment interest, all ill-gotten gains obtained by her from any of the Defendants including, but not limited to, payments to her totaling approximately $136,800 from 127 Holdings;

E. Order Relief Defendant 127 Partners, LLC to disgorge, with prejudgment interest, all ill-gotten gains obtained by it from any of the Defendants including, but not limited to, payments to it totaling approximately $229,000 from 127 Holdings;

F. Order Joseph Meli, Matthew Harriton, 875 Holdings, LLC, 127 Holdings, LLC, Advance Entertainment, LLC, and Advance Entertainment II, LLC, to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

G. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and,

H. Grant such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

The Commission hereby demands a trial by jury on all claims so triable.

Dated: January 27, 2017
Boston, MA

On behalf of the Commission,

//s// Alicia M. Reed

Alicia M. Reed (NY Bar # 4913596)
Dahlia Rin* (MA Bar # 674137)
Rebecca Israel* (NY Bar # 4783304)
Martin F. Healey* (MA Bar # 227550)
U.S. Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 24th Floor

Boston, MA 02110
(617) 573-8807 (Rin)
RinD@sec.gov

*Not admitted in the S.D.N.Y.